EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Rosa Lydia Vélez *et al.*<br><br>Peticionarios<br><br>v.<br><br>Departamento de Educación *et al.*<br><br>Recurridos | Certiorari<br><br>2016 TSPR 2<br><br>194 DPR ____ |

Número del Caso: CC-2015-174

Fecha: 7 de enero de 2016

Tribunal de Apelaciones:

      Región Judicial de San Juan, Panel V

Abogados de la parte Peticionaria:

      Lcdo. José Torres Valentín
      Lcdo. José J. Nazario de la Rosa
      Lcda. Marilucy González Baez
      Lcdo. Carlos E. Gómez Menéndez

Oficina de la Procuradora General:

      Lcda. Margarita Mercado Echegaray
      Procuradora General

      Lcda. Amir Cristina Nieves Villegas
      Procuradora General Auxiliar

Materia: Sentencia con Opinión Particular

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Rosa Lydia Vélez *et al.*

    Peticionarios

        v.                          CC-2015-174
    Certiorari

Departamento de Educación
*et al.*

    Recurridos

SENTENCIA

San Juan, Puerto Rico, a 7 de enero de 2016.

Se expide el auto de *certiorari* y se revoca aquella parte de la Sentencia emitida por el Tribunal de Apelaciones por medio de la cual se excluyó a los padres, madres, y encargados de niños y niñas registrados en el Programa de Educación Especial del Departamento de Educación como partes reclamantes en el pleito de daños y perjuicios contra la parte recurrida. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos conforme a lo aquí resuelto.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió una Opinión Particular.

La Juez Asociada señora Rodríguez Rodríguez disiente y hace constar la siguiente expresión: "La Juez Asociada señora Rodríguez Rodríguez hubiera confirmado el dictamen recurrido, por entender que, en efecto, los padres, madres y encargados de los niños y niñas registrados en el Programa de Educación Especial del Departamento de Educación no son partes de la clase, según ésta fue certificada por el Tribunal de Primera Instancia. De otra parte, es menester señalar que, en lo que respecta

a las reclamaciones de daños y perjuicios de los padres, madres y encargados, el foro apelativo intermedio, al permitir que éstas se ventilaran en el mismo pleito, le otorgó un margen de discreción sustancial al foro primario, con tal que éste tomara las medidas necesarias a la hora de dirimir las mismas. Por tanto, habiendo el foro primario ejercido esa discreción, y no siendo los peticionarios parte de la clase, según certificada hace más de tres décadas, procedía confirmar el dictamen recurrido".

La Jueza Presidenta señora Fiol Matta disiente y se une a la expresión emitida por la Juez Asociada señora Rodríguez Rodríguez. La Jueza Asociada Oronoz Rodríguez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Rosa Lydia Vélez *et al.*

    Peticionarios

       v.                        CC-2015-174       Certiorari

Departamento de Educación
*et al.*

    Recurridos

Opinión Particular emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 7 de enero de 2016.

La controversia ante este Tribunal forma parte de una intrincada y tortuosa trayectoria judicial cuyo origen se remonta a más de tres décadas. Entretanto, miles de niños y niñas con necesidades educativas especiales, conjuntamente con sus padres, madres y encargados, aún esperan porque finalmente se les haga justicia, se atiendan sus reclamos y se les otorgue un remedio a sus necesidades apremiantes. En esa larga odisea judicial, los padres, madres y encargados de esos niños y niñas acuden a las puertas de este Tribunal en un intento por vindicar tanto sus derechos como los de estos últimos.

Tras sopesar los intereses de todas las partes involucradas, y en vista de la etapa procesal en que se encuentra este caso, considero insoslayable la intervención de este Tribunal. Sin duda, el marcado interés público que reviste la controversia de epígrafe, en unión a los particulares hechos y trámites procesales ante nuestra consideración, así lo exigían.

Ante esa insoslayable realidad, estoy conforme –en esencia- con el curso de acción de este Tribunal, toda vez que considero que se le concede un remedio **adecuado y oportuno** a los miles de padres, madres y encargados de niños y niñas con necesidades educativas especiales que forman parte de este pleito y, más que todo, se brinda agilidad a los procedimientos adjudicativos tras un largo litigio de más de 34 años. Ahora bien, opino que el remedio otorgado **no fue completo**, ya que este Tribunal también debió considerar el segundo señalamiento de error presentado por los peticionarios, relacionado a la inferencia de relación o nexo causal entre la negligencia admitida por el Estado y los daños y perjuicios que reclaman todos los demandantes.

A continuación, expongo los antecedentes fácticos y procesales que suscitaron la controversia que nos ocupa.

## I

El caso de autos se remonta al 14 de noviembre de 1980, cuando la Sra. Rosa Lydia Vélez y otros padres, madres y encargados de estudiantes que requerían los

servicios de educación especial (demandantes o peticionarios) incoaron, **por sí** y en representación de estos últimos, una demanda de *injunction* y daños y perjuicios contra el Estado.[1] En esencia, los demandantes alegaron que el Estado estaba incumpliendo con los estatutos federales y estatales que le obligan a proveer educación especial y ciertos servicios a los estudiantes con necesidades educativas particulares. Entre otras cosas, solicitaron la certificación del pleito como uno de clase, a la vez que reclamaron indemnización por los daños ocasionados por el Estado.

El 10 de septiembre de 1981, el Tribunal de Primera Instancia emitió un dictamen en el cual certificó la acción interdictal como un pleito de clase. A tales efectos, los parámetros de la clase fueron descritos de la siguiente forma:

[T]odos los niños con impedimentos menores de 21 años elegibles o participantes en el Programa de Educación Especial del Departamento de Instrucción Pública a quienes los demandados no les están proveyendo la educación especial y servicios relacionados que les garantiza la legislación de educación especial.

Mediante dictamen emitido el 27 de mayo de 2003, el foro primario adjudicó de forma final el interdicto solicitado y concedió un remedio a los demandantes. Sin embargo, rechazó dirimir la reclamación de daños como un pleito de clase. De esta forma, determinó que los

---

[1]También forma parte de la demanda el Comité Timón de Padres de Niños con Impedimentos de Puerto Rico. Todos conforman un pleito integrado por niños y niñas con necesidades educativas especiales y sus padres, madres y encargados.

demandantes debían presentar pleitos independientes a fin de que cada cual probara sus alegados daños.

Inconformes con este proceder, los peticionarios recurrieron ante el Tribunal de Apelaciones. El 21 de octubre de 2005, el foro apelativo intermedio emitió una Sentencia por medio de la cual confirmó el dictamen recurrido en cuanto a que no procedía la certificación de clase para la concesión de daños.[2] Ello, toda vez que razonó que éstos podían variar conforme a cada demandante. Empero, luego de considerar injusto y oneroso obligar a los demandantes a presentar nuevas demandas y a emplazar a los demandados, el foro apelativo modificó el dictamen del foro primario. A esos fines, concluyó lo siguiente:

[Q]ue el TPI dentro de este mismo pleito adjudique las reclamaciones de daños y perjuicios que alegadamente sufrieron cada uno de los miembros de la clase, aunque queda a la discreción del TPI sub-dividir en grupos, de ser posible, a los demandantes cuyos perjuicios educativos y subsiguientes daños sufridos sean similares. De no ser posible, tendrá que ventilar cada caso individualmente.

Ninguna de las partes recurrió de dicha Sentencia, por lo que ésta advino final y firme.

A tenor con el referido mandato, el Tribunal de Primera Instancia designó un Comisionado Especial (Comisionado) para atender el aspecto de la negligencia y los daños alegados por los demandantes. En cumplimiento con esa encomienda, el Comisionado emitió un *Informe-Resolución-Recomendación* en el cual determinó, en esencia,

que los demandantes estaban relevados de presentar prueba respecto a la negligencia del Estado, ya que este último reconoció haber actuado negligentemente. Asimismo, el Comisionado estableció que, debido a los hechos particulares del caso, los demandantes no tenían que probar o establecer el elemento de causalidad entre la negligencia incurrida por el Estado y los alegados daños sufridos por éstos.

Examinado el referido informe, el 31 de enero de 2014, el Tribunal de Primera Instancia dictó una Resolución y Orden en la cual acogió la recomendación del Comisionado en cuanto a que la negligencia había sido admitida por el Estado, por lo que los demandantes estaban relevados de probarla. No obstante, rechazó el planteamiento del Comisionado en lo tocante al nexo causal. En su lugar, el foro primario concluyó que si bien la negligencia fue aceptada por el Estado, la parte demandante tenía el peso de la prueba para establecer la relación causal entre la negligencia y los daños reclamados.

A pesar de que la Sentencia del Tribunal de Apelaciones de 21 de octubre de 2005 (KLAN0301177) advino final y firme desde hace aproximadamente una década, estando los padres, madres y encargados bajo la correcta creencia de que sus reclamaciones de daños serán adjudicadas dentro de este mismo pleito, y tras más de

_____

[2]Rosa Lydia Vélez y otros v. Awilda Aponte Roque y otros,

tres décadas de litigio, sorpresivamente el Tribunal de Primera Instancia los excluyó como partes reclamantes. Concluyó que éstos debían instar demandas independientes para reclamar sus daños particulares. Luego de varios incidentes procesales, incluida la presentación de diversas solicitudes de reconsideración, el 16 de abril de 2014, el Tribunal de Primera Instancia emitió una Resolución Enmendada en la que se reiteró en lo expuesto en el dictamen del 31 de enero de 2014.

Ante ello, los peticionarios acudieron al Tribunal de Apelaciones. En síntesis, alegaron que el foro primario incidió al determinar lo siguiente: (1) no reconocer como reclamantes en daños y perjuicios a los padres, madres y encargados de niños y niñas registrados en el Programa de Educación Especial del Departamento de Educación (Programa); y (2) no reconocer la inferencia de nexo causal entre la negligencia admitida por el Estado y los daños alegados por los demandantes.

El 12 de diciembre de 2014, el foro apelativo intermedio emitió una Sentencia mediante la cual confirmó el dictamen recurrido. En lo pertinente, decretó que los padres, madres y encargados de los niños y niñas registrados en el Programa no fueron incluidos en los parámetros de la definición de clase, según fue establecida. Además, confirmó la negativa del foro primario de reconocerlos como reclamantes en la acción de

_____
KLAN0301177 (Sentencia del Tribunal de Apelaciones).

daños contra los demandados. Luego de tantos años de participación activa en los trámites procesales y a pesar de las expectativas creadas, el Tribunal de Apelaciones razonó, contrario a la Sentencia KLAN0301177 y **por primera vez**, que solo eran reclamantes aquellos padres, madres y encargados que tienen casos presentados o debidamente consolidados con el original.

En cuanto al segundo error señalado por los demandantes, el Tribunal de Apelaciones concluyó que si bien el Estado admitió haber sido negligente en ofrecer los servicios adecuados a la población estudiantil que conforma la clase, ello no implica que pueda inferirse que tal negligencia sea la causa próxima de los daños que los demandantes puedan probar en su día. Según el foro apelativo intermedio, si bien la negligencia del Estado puede constituir una causa fáctica, es necesario producir evidencia suficiente que establezca que esa negligencia ha sido o es la causa adecuada de los daños reclamados.

En disconformidad con el curso de acción del Tribunal de Apelaciones, los peticionarios recurren ante este Tribunal mediante recurso de *certiorari*. Esencialmente, plantean los señalamientos de error esgrimidos ante el foro apelativo intermedio. A tono con ello, sostienen que los foros recurridos erraron al determinar lo siguiente: (1) no reconocer como reclamantes en daños y perjuicios a los padres, madres y encargados de niños y niñas registrados en el Programa y; (2) no reconocer la

inferencia causal entre la negligencia admitida por el Estado y los daños reclamados.

En atención a lo anterior, el 29 de junio de 2015, emitimos una Resolución mediante la cual le ordenamos a la parte recurrida que en un término de diez días mostrara causa por la cual no debíamos revocar la Sentencia emitida por el Tribunal de Apelaciones, con relación al primer error señalado por los peticionarios.[3] Oportunamente, la parte recurrida compareció mediante *Escrito en Cumplimiento de Orden de Mostrar Causa.*

Con el beneficio de la comparecencia de las partes involucradas, este Tribunal expidió el recurso de *certiorari* presentado y otorgó un remedio a los peticionarios.

## II

Esencialmente, los peticionarios reclaman que se dirima su causa de acción en daños, con relación a las actuaciones ilegales del Estado, por ser parte de los procedimientos pendientes en el caso de epígrafe. Fundamentan su petitorio en que desde el origen de este litigio comparecieron **por sí** y en representación de los niños y niñas que conformaban la clase descrita, por lo que han participado activamente a lo largo de todo el historial jurídico del caso. De esta forma, sostienen que desde la génesis del pleito han descansado en la

---

[3]En aquel momento consigné que también hubiese incluido en la orden de mostrar causa el segundo señalamiento de error. La Jueza Asociada señora Pabón Charneco se unió a esa expresión.

expectativa creada por el Poder Judicial de que, dentro de las facetas del mismo litigio, pueden válidamente reclamar una indemnización económica por concepto de daños sufridos.

Inclusive, los peticionarios expresan que el Tribunal de Primera Instancia ha procedido durante el transcurso de los pasados 10 años bajo el entendido de que éstos tienen derecho a ser incluidos como demandantes en los pleitos que se derivan en la fase de daños y perjuicios. Es más, nos han demostrado que el foro primario inició y realizó trámites para adjudicar las reclamaciones de daños tanto de los niños y niñas como las suyas, tal como se puede constatar en el expediente. Ante ello, manifiestan que conlleva una gran injusticia informarles ahora que luego de décadas de un azaroso proceso judicial quedan excluidos como partes reclamantes en este pleito. Amparados en todo lo anterior, sostienen que excluirlos como reclamantes representa un serio problema de acceso a la justicia para los padres, madres y encargados que han esperado por décadas la oportunidad de reclamar la reparación de agravios para sí por motivo de las sostenidas actuaciones ilegales del Estado para con sus niños y niñas con necesidades educativas especiales.

_____

**A.**

Luego de aquilatar los argumentos de los peticionarios, en unión a los documentos que obran en el expediente, considero que resulta imperativo atender el reclamo de los peticionarios. Ello, toda vez que sostengo que esta controversia requiere la oportuna intervención de este Tribunal, con el fin de agilizar los procedimientos en este largo pleito judicial y, de esta forma, promover que el Poder Judicial atienda diligentemente los reclamos incoados por **todos** los involucrados en este caso. Indudablemente, rechazar intervenir en estos momentos dejaría desprovistos de un remedio a todos esos padres, madres y encargados que durante años han descansado en la expectativa creada por el Poder Judicial de que sus reclamos están siendo considerados y ponderados como parte integral del litigio incoado en los albores de la década del 80.

Ante esa diáfana realidad, cabe cuestionarse: ¿acaso no representa un contrasentido jurídico excluir a todos esos padres, madres y encargados que por décadas han participado activamente de este pleito que, precisamente, comenzó **por sí** y en representación de los niños y niñas que conforman la clase? ¿No acarrea una estocada a la sana administración de la justicia y a la economía procesal compeler a todos los peticionarios a iniciar a estas alturas, con todo lo que ello implica, otro proceso

*individual e independiente* contra el Estado para vindicar sus derechos?

Adviértase que el dictamen emitido por el Tribunal de Apelaciones el **21 de octubre de 2005** no excluyó a todos esos padres, madres y encargados como partes reclamantes en el pleito. Nótese que dicho dictamen no fue apelado por ninguna de las partes involucradas en este caso. En consecuencia, considero que a la luz de los hechos ante nuestra consideración lo resuelto por el foro apelativo intermedio el 21 de octubre de 2005 constituye la ley del caso. Recordemos que las controversias sometidas, litigadas y decididas por un tribunal dentro de una causa deben usualmente respetarse como finales. De esta forma, las partes pueden, en la medida de lo posible, conducir su proceder en el pleito a base de unas directrices judiciales confiables y certeras. Mgmt. Adm. Servs. Corp. v. ELA, 152 DPR 599, 607-608 (2000).

A la luz del tracto procesal particular de este caso de alto interés público, opino que excluir ahora a todos esos padres, madres y encargados de este pleito y obligarlos a presentar reclamaciones separadas trastocaría nociones básicas de la doctrina de la ley del caso y, más aún, crearía un disloque innecesario en el sistema judicial y en el manejo de tales casos. Esto, además de las complicaciones innecesarias que irremediablemente impactarán el pleito original. Tal y como lo han expresado

los foros recurridos, coincido en que **este litigio no debe complicarse aún más, sino simplificarse.**

A tono con ello, es menester enfatizar que nuestro ordenamiento cuenta con mecanismos para atender este tipo de situaciones y que las reglas procesales que gobiernan los procesos de naturaleza civil deben interpretarse de manera que **faciliten el acceso a los foros judiciales y el manejo del proceso, de forma que garanticen una solución justa, rápida y económica de todo procedimiento.** *Véase* Regla 1 de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 1. Esto es, nuestro ordenamiento procesal establece como principio rector la tramitación justa, rápida y económica de los pleitos.

Ante ese cuadro, sostengo que procede reconocer que los padres, madres y encargados de niños y niñas registrados en el Programa sean acumulados en el pleito de daños y perjuicios contra los recurridos. Ello, al amparo de la Regla 17.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 17.1, la cual dispone expresamente que:

Podrá acumularse en un pleito cualquier número de personas, como **demandantes** o como demandadas, si **reclaman** o se reclama contra ellas conjunta o separadamente, o en la alternativa, **cualquier derecho a un remedio relacionado con o que surja del mismo acto, omisión, evento o serie de actos, omisiones o eventos siempre que cualquier cuestión de hecho o de derecho, común a todas, haya de surgir en el pleito.** No será requisito que una parte demandante o parte demandada tenga interés en obtener o defenderse de todo el remedio solicitado. Podrá dictarse sentencia a favor de una o más partes demandantes de acuerdo con sus respectivos derechos a un remedio y contra una o más partes demandadas de acuerdo con sus respectivas responsabilidades. 32 LPRA Ap. V, R. 17.1. (Énfasis suplido).

Adviértase que en el caso de autos, los padres, madres y encargados han reclamado ser parte en el pleito de daños y perjuicios **desde su origen**. Además, entiendo que se cumplen los requisitos que exige la Regla 17.1 para que sea permisible la acumulación. Este Tribunal ha expresado que estos requisitos son los siguientes: (1) que se reclame mancomunada, solidaria o alternativamente cualquier derecho a un remedio relacionado con, o que surja de la misma transacción, evento, o serie de transacciones o eventos; y (2) la existencia de cualquier cuestión de hecho o de derecho común a todas las reclamaciones. Meléndez v. Levitt & Sons of PR, Inc., 106 DPR 437, 439 (1977) (*Per Curiam*); *véase*, además, J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., San Juan, Publicaciones JTS, 2011, T. II, págs. 713-719.

Evidentemente, en el caso de epígrafe estamos ante reclamaciones que surgen de la misma serie de transacciones o eventos, las cuales son las actuaciones negligentes de los recurridos. Asimismo, existen cuestiones de hecho comunes a todas las reclamaciones, que son los alegados daños sufridos por los padres, madres o encargados por motivo de las actuaciones ilegales de la parte recurrida. La cuestión de derecho común es la responsabilidad de los recurridos por esos alegados daños.

En fin, soy del criterio que procede la acumulación de los padres, madres o encargados como reclamantes en el

pleito de daños y perjuicios, en aras de evitar la duplicidad de esfuerzos al celebrarse juicios por separado. Consideraciones de economía procesal y sana administración de la justicia así lo exigen. No albergo duda de que el reconocer a los padres, madres o encargados como reclamantes en el pleito de daños y perjuicios adelantará el principio rector de procurar evitar la multiplicidad de pleitos y propiciar la resolución más justa, rápida y económica de los litigios.

### III

Por último, es imperativo señalar que la controversia ante nos pone nuevamente de relieve la problemática de la falta de acceso a la justicia que, lamentablemente, permea en nuestra sociedad; problemática que se acentúa cuando se trata, como en el caso de epígrafe, de pleitos revestidos de alto interés público cuyas particularidades urgen un mayor acceso de los ciudadanos a los foros judiciales. Por ello, considero que negarse a actuar en estos momentos conllevaría ignorar la atención diligente que requiere este caso y, por ende, cerrarles las puertas a unos padres, madres y encargados que por años han reclamado que se les conceda el remedio que en derecho le asiste. En ese sentido, recordemos que el Poder Judicial viene llamado a velar y asegurar que **todos los ciudadanos sean acreedores de un mayor acceso efectivo a los tribunales.**[4] *Véase*

---

[4] Para una discusión más amplia en torno al derecho de acceso a la justicia, véase E. Chemerinsky, <u>Constitutional Law: Principles and Policies</u>, Aspen Publishers, 2d. ed., sec. 10.9 (2002).

Exposición de Motivos de la Ley Núm. 201-2003 (2003 (Parte I) Leyes de Puerto Rico 973). Ello constituye una exigencia insoslayable e indelegable. Indiscutiblemente, el acceso a la justicia no debe verse tronchado por determinaciones judiciales a destiempo que trastoquen la ley del caso y el trámite ordinario que ha llevado este caso.

Me complace que en esta ocasión este Tribunal proceda acorde con la política pública reconocida en la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, 4 LPRA sec. 24 *et seq.*, la cual nos impone la responsabilidad de propiciar a toda la ciudadanía acceso inmediato y económico a un sistema judicial **sensible a la realidad de los distintos miembros de la sociedad.** *Véase* Exposición de Motivos de la Ley Núm. 201-2003 (2003 (Parte I) Leyes de Puerto Rico 972). Sin duda, denegar el presente recurso hubiese dado al traste con el mandato de que la Rama Judicial sea "accesible a la ciudadanía; prestará servicios de manera equitativa, **sensible y con un enfoque humanista**". 4 LPRA sec. 24a. (Énfasis suplido). En otras palabras, denegar la petición que nos ocupa hubiese conllevado la adopción de un enfoque contrario al reconocimiento de que el acceso a la justicia constituye un derecho fundamental.[5]

---

[5]En el pasado, he reconocido que **el derecho de acceso a la justicia es una garantía indispensable** para el ejercicio de los derechos reconocidos por tratados internacionales, constituciones y leyes. *Véase* Voto Particular Disidente del Juez Asociado señor Estrella Martínez emitido en el asunto *In re* Aprobación de los

Sin duda, la llave esencial que hoy se les otorga a los peticionarios persigue abrir otras puertas para ver los frutos de una lucha social, educativa y jurídica inconclusa que ha persistido por más de tres décadas, enmarcada en el derecho a presentar una acción civil contra el Estado. Y ese derecho, a su vez, tiene su génesis nada más y nada menos que en el reconocimiento del Estado de que ha sido negligente en aspectos medulares del derecho que poseen los niños y niñas con necesidades educativas especiales.

Como se desprende de los hechos de este caso, los foros recurridos pretendieron lanzar a los peticionarios al laberinto de la burocracia extrema y el rigorismo inhumano. Una vez los peticionarios están viendo la luz al final del túnel, luego de más de 30 años de espera, los foros recurridos intentaron apagarles la luz al instruirle que regresaran al inicio a oscuras. Con ello, los peticionarios tropezarían con múltiples barreras que les dificultarían obtener el remedio adecuado, completo y oportuno que les asiste.

Por fortuna, este Tribunal expidió el recurso de *certiorari* presentado y concedió un remedio -aunque a medias- a los peticionarios. Habida cuenta de que avalo un proceder que es cónsono con el derecho de acceso a la justicia, que valida el interés apremiante que reviste

---

derechos arancelarios pagaderos a los(as) Secretarios(as), Alguaciles(as), y a otro personal de la Rama Judicial que ejerce

este pleito y, a su vez, subsana las consecuencias particulares que acarreaban los dictámenes emitidos por los foros recurridos, estoy conteste –en esencia– con la determinación de este Tribunal.

## IV

Por todo lo anterior, esencialmente estoy conforme con el dictamen emitido por este Tribunal. No obstante, dejo consignado que este Tribunal debió examinar el segundo señalamiento de error presentado por los peticionarios, relacionado a la inferencia de relación o nexo causal entre la negligencia admitida por el Estado y los daños y perjuicios reclamados por todos los demandantes.

Luis F. Estrella Martínez
Juez Asociado

---

funciones de recaudación, res. el 9 de marzo de 2015, 2015 TSPR 21, 192 DPR ___ (2015).