EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Estado Libre Asociado de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>El Ojo de Agua Development, Inc.; John Doe Y Richard Doe<br><br>Recurridos | Certiorari<br><br>2018 TSPR 12<br><br>199 ____ |

Número del Caso: CC-2016-662

Fecha: 2 de febrero de 2018

Tribunal de Apelaciones:
    Región Judicial de San Juan

Oficina del Procurador General

    Lcdo. Luis R. Román Negrón
    Procurador General
    Lcdo. Guillermo Mangual Amador
    Procurador General Auxiliar

Abogada de la parte recurrida:

    Lcda. Cynthia Torres Torres

Materia: Resolución del Tribunal con Voto Particular Disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Estado Libre Asociado
de Puerto Rico

    Peticionario

       v.

                          CC-2016-662      *Certiorari*

El Ojo de Agua Development,
Inc.; John Doe y Richard Doe

    Recurridos


RESOLUCIÓN

San Juan, Puerto Rico, a 2 de febrero de 2018.

Examinadas la *Moción en Torno a Resolución de 22 de Agosto de 2017* sometida por la parte recurrida, así como la *Moción en Cumplimiento de Orden*, presentada por la parte peticionaria, se declara *Ha Lugar* esta última.

Por consiguiente, y acorde con la petición presentada por el Estado Libre Asociado de Puerto Rico bajo el Título III de PROMESA el 3 de mayo de 2017, se ordena el archivo administrativo de este recurso y la paralización de los procedimientos, hasta tanto una de las partes nos certifique que se ha levantado la paralización automática, ya sea por la conclusión del procedimiento de quiebras o mediante una solicitud a esos efectos, según permite la Sección 362(d) del Código Federal de Quiebras.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres está conforme y hace constar la siguiente expresión, a la que se une la Jueza Asociada señora Pabón Charneco:

    El Juez Asociado señor Martínez Torres vota conforme. Como Puerto Rico es un territorio de Estados Unidos, está sujeto a la Sec. 301(a) de la Puerto Rico Oversight, Management and Economic Stability

Act, 48 USC sec. 2161(a), que el Congreso aprobó sin participación de nuestro pueblo. Por esa razón, esta acción monetaria contra el Estado Libre Asociado quedó paralizada automáticamente con la presentación de la petición de quiebra del gobierno del territorio. No hace diferencia la razón por la que se hace la reclamación de dinero contra el territorio. Así pues, este caso está paralizado por ley federal y no por capricho nuestro. Rechazo toda manifestación de que por reconocer esa realidad estoy renunciando a mi deber. Las cosas son como son y no como yo quisiera que fueran.

La Jueza Presidenta Oronoz Rodríguez disiente y hace constar la siguiente expresión, a la que se une el Juez Asociado señor Colón Pérez:

Disiento del proceder de una Mayoría de este Tribunal por entender que, debido a que no estamos ante una reclamación monetaria convencional, paralizar este caso tendría repercusiones nefastas sobre un derecho fundamental.

El caso de referencia comenzó en abril de 2008 cuando el Estado presentó una solicitud de expropiación forzosa y consignó la cuantía que estimó razonable ($180,600) como justa compensación. Solicitó además al foro primario que se le entregara la propiedad mediante la presentación de una declaración para la adquisición y entrega material. Véase 32 LPRA secs. 2907 y 2918. El tribunal accedió y emitió una Resolución en la cual indicó que el Estado tenía derecho a la posesión inmediata y uso. Por su parte, Ojo de Agua Development, Inc. (recurrido) impugnó la justa compensación que se consignó y alegó que la expropiación afectaba el valor del remanente de su finca porque estaba enclavada.

Luego de los trámites correspondientes, el foro primario determinó que el Estado debía pagar la cantidad de $1,700,000 como justa compensación; esto es, el valor de lo expropiado -$295,000-, así como $1,403,000 por la pérdida de valor del predio remanente. Posteriormente también le impuso $50,350 por las costas del litigio. El

Tribunal de Apelaciones confirmó las cuantías pero indicó que, una vez el Estado pagara la justa compensación por el remanente, recibiría también el título de ese predio. El Estado recurrió ante nos y expedimos el recurso para atender el error relacionado a las costas.

Sin embargo, surgió la interrogante de si procedía paralizar el pleito ante la petición de quiebra que presentó el Estado y las secciones 362 y 922 del Código Federal de Quiebras que incorporó la sección 301(a) del Título III del Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA), 48 U.S.C. sec. 2161(a). Para realizar este análisis, considero necesario abundar sobre el derecho constitucional que se intenta vindicar.

Como saben, la Sec. 9 del Art. II de nuestra Constitución establece que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley". Art. II, Sec. 9, Const. ELA, LPRA, Tomo 1. Las exigencias que establece esta sección tienen el propósito de imponerle un límite al poder de dominio eminente del Estado y, al mismo tiempo, proteger al ciudadano de actuaciones irrazonables por parte de este. N. A. Matos Rivera, Vivienda Propiedad y Justicia, 86 Rev. Jur. UPR 969, 983 (2017) citando a C. Torres Torres, *La expropiación forzosa en Puerto Rico: Ley, jurisprudencia, estudio y guía práctica*, ed., San Juan, 2002, pág. 4. En lo que se refiere a la justa compensación, hemos señalado que mediante su pago se pretende "colocar al dueño de la propiedad en una situación económica equivalente a la que se encontraba con anterioridad a la expropiación de su propiedad". Amador Roberts v. ELA, 191 DPR 268, 278-279 (2014).

Asimismo, la Quinta enmienda de la Constitución de los Estados Unidos establece que el Estado no podrá ocupar propiedad privada para uso público sin una justa compensación. Enmd. V, Const. EE.UU., LPRA, Tomo 1. Conviene destacar que la ley PROMESA, además de incorporar las secciones 362 y 922 del Código Federal de Quiebras,

dispone que: "(…) nothing in this chapter shall be construed as impairing or in any manner relieving a territorial government, or any territorial instrumentality thereof, from compliance with Federal laws or requirements (…)." 48 USC sec. 2106. Es decir, el propio estatuto reconoce que el proceso de Título III no exime al Estado del deber de cumplir con la Constitución federal, incluyendo la Quinta enmienda. Por tanto, paralizar este pleito y menoscabar el derecho que tiene una persona a una justa compensación -al posponer dicho pago- violaría su derecho constitucional bajo ambas constituciones, y sería contrario al propio estatuto que incorporó la paralización.

En este caso, por ejemplo, ordenar la paralización conllevaría que el Estado continúe disfrutando del predio que expropió inicialmente -**y cuyo título ya le fue investido en el 2008**-, sin exigirle que cumpla con su deber constitucional de pagar una justa compensación. En síntesis, le permitiría al Estado comenzar un procedimiento de expropiación, obtener la posesión e incluso la titularidad de la propiedad y, si la parte afectada impugna la cuantía consignada, paralizar el caso sin desembolsar absolutamente nada. Así, logra tomar una propiedad privada para uso público sin tener que ofrecer una compensación "justa", por lo menos mientras dure la paralización.

Conviene mencionar que no todos los casos en los cuales el Estado es parte se paralizan conforme a PROMESA. A esos efectos, tanto los tribunales federales como los estatales tenemos la facultad inicial de interpretar la paralización y su aplicabilidad a los casos. Rafael Lacourt Martínez v. Junta de Libertad Bajo Palabra, 2017 TSPR 144, 5, 198 DPR ___ (2017); véase In Mid-City Parking, Inc., 332 B.R. 798, 803 (N.D. Ill. 2005).

Al analizar esta situación excepcional, debíamos tener presente que esto no es un caso de daños o de incumplimiento de contrato donde el ciudadano demanda al Estado para recobrar dinero. Aquí el Estado expropió y despojó a alguien de su propiedad

y no puede utilizar el Código Federal de Quiebras como subterfugio para no pagar. Además, según la Ley de Expropiación Forzosa, una vez culmina el pleito el municipio correspondiente -en este caso Juana Díaz- reembolsa al Estado las sumas pagadas y el Estado, a su vez, le traspasa el título al municipio. Véase 32 LPRA sec. 2919. Por tanto, la expropiación no se sufraga con dinero del fondo general, sino con fondos del municipio, que no está protegido por la quiebra.

En consideración a lo anterior, no procedía conceder la solicitud del Estado. Avalar este curso de acción es una renuncia por parte de una Mayoría de este Tribunal de nuestro deber de velar por el cumplimiento de las garantías constitucionales que nos cobijan. Por ello, disiento.

El Juez Asociado señor Estrella Martínez emite un Voto Particular Disidente.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Estado Libre Asociado
de Puerto Rico

  Peticionario

         v.                 CC-2016-0662      Certiorari

El Ojo de Agua
Development, Inc.

    Recurridos


Voto particular disidente emitido por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ


San Juan, Puerto Rico, a 2 de febrero de 2018.

> The U.S. Congress --the most democratic lawmaking body in the world-- created and injected life to the Commonwealth of Puerto Rico, guaranteeing a Republican form of government. Notwithstanding, the current predicament --described by former Governor Pedro J. Roselló as "the unfinished business of American Democracy"-- makes it incumbent upon Congress and the U.S. citizens of Puerto Rico and other U.S. territories to reexamine whether --in 2017-- a colonial regime should embarrassingly continue to persist in the Unites States. If the answer is no, then the time is ripe for all U.S. citizens of this great Nation to ask for and ultimately be afforded equality and participation in their own governance.
>
> G. A. Gelpí, <u>The Constitutional Evolution of Puerto Rico and other U.S. Territories (1898-Present)</u>, San Juan, Inter American University of Puerto Rico, Metropolitan Campus, 2017, pág. 272.

El caso que en el día de hoy tiene ante sí este Tribunal concierne a una acción de expropiación a la inversa que insta El Ojo de Agua Development, Inc. contra el Estado. El Procurador

General recurre ante nos, por entender que el litigio debe ser paralizado según el Título III de la Ley PROMESA, infra.

Precisamente por nuestra condición territorial y por la ausencia de poder igualitario ante el Congreso de los Estados Unidos, tanto la Rama Judicial local como la federal tienen el **deber ministerial** de ejercer su poder concurrente para adjudicar y salvaguardar los derechos constitucionales de un Pueblo que no tuvo participación en la aprobación del Puerto Rico Oversight Management, and Economic Stability Act (PROMESA), 48 USC sec. 2101 et seq. Véase, además, Laboratorio Clínico Irizarry v. Departamento de Salud, res. 3 de agosto de 2017, 2017 TSPR 145; Rafael Lacourt Martínez v. Junta de Libertad Bajo Palabra, res. 3 de agosto de 2017, 2017 TSPR 144 (que **fueron resueltos por unanimidad** y que atendieron expresamente el asunto de la jurisdicción concurrente). En ese sentido, a la altura de estos tiempos, la Rama Judicial no puede echarse para atrás para ser un mero espectador y simplemente asentir a que el Congreso federal haga como le plazca. Si esa hubiera sido la actitud de jueces vanguardistas, otra sería la realidad actual de sectores vulnerables y discriminados históricamente bajo la nefasta época de la esclavitud, la segregación racial y la desigualdad de la mujer, entre otros males sociales. A la altura de estos tiempos, es imperativo actuar proactivamente y conforme a derecho. Máxime, cuando se trata de la

aplicación de las garantías constitucionales que el Congreso ni nadie puede pasar por alto.

No se puede obviar que el propio Congreso reconoció en PROMESA que la referida ley no autoriza al Gobierno territorial, ni a ninguna de sus instrumentalidades, a menoscabar o incumplir las leyes federales. 48 USC sec. 2106 (haciendo aplicable a los litigios bajo el Título III lo dispuesto en las secciones 362 y 922 del Título 11 de Quiebras, 11 USC secs. 362 y 922). Más relevante aún, el Congreso sí permitió que se presenten excepciones a la paralización automática de pleitos en los procesos bajo el Título III, una vez adoptó la sección 362(d)(1) del Título 11. Véase, sección 301 de PROMESA, 48 USC sec. 362(d)(1). La referida sección les otorga a los tribunales el poder de eliminar la suspensión automática de los procedimientos por "cause".

A esos efectos, el Tribunal de Apelaciones federal para el Segundo Circuito, interpretando la sección mencionada del Título 11, dispuso que "[t]he lack of adequate protection of an interest in property is one cause for relief". In re Sonnax Indus, 907 F.2d 1280, 1285 (2d Cir. 1990) (cita omitida). Asimismo, el Tribunal de Apelaciones federal para el Primer Circuito, concerniente a la suspensión automática de litigios, según dispuesto por la sección 405(e) de PROMESA, estableció que:

> [T]hat certain circumstances might justify
> relief from the stay's significant, rigid effects.

It therefore included a form of safety valve in section 405(e) of PROMESA to allow certain holders of "liability claims" against the Government of Puerto Rico to proceed with their actions, provided that they could effectively demonstrate "cause" for doing so. <u>Brigade Leveraged Capital Structure Fund Ltd. v. García Padilla et al.</u>, 217 F. Supp. 3d 508, 517 (1st Cir. 2016).

De igual modo, el Tribunal de Apelaciones federal estableció que la determinación de qué constituye **"causa"** sería efectuada "caso a caso", tomando en consideración el daño a ser causado por la permanencia de la suspensión. <u>Íd.</u>, pág. 518. De igual manera, dictó lo siguiente, a saber:

[The] ultimate task is to perform a careful balancing of the equities involved. It must assess the hardships realistically borne by plaintiffs if their requested relief is denied and determine whether those outweigh the harm likely to be visited upon the Commonwealth defendants if that relief is granted <u>Íd.</u>, págs. 518-519.

De lo anterior, es importante aclarar que el Tribunal de Apelaciones llegó a las expresiones antes mencionadas a través de una lectura de la sección 362 del Título 11 de Quiebras, 11 USC sec. 362, y su jurisprudencia interpretativa.

No es menos importante recordar que los intereses propietarios que El Ojo de Agua Development, Inc. intenta reivindicar están cobijados por la protección constitucional de la incautación sin justa compensación, consagrada en la Constitución federal. Emdas. XIV y V, Const. EE.UU., LPRA, Tomo 1. <u>Véase, además</u>, Art. II, Sec. 9, Const. ELA, LPRA, Tomo 1. A estos efectos, resulta imperativo mencionar que Tribunal Supremo federal ha sostenido que la referida

protección aplica a procedimientos de quiebra. Louisville Joint Stock Land Bank v. Radford, 295 US 555 (1935). Véase, además, Blanchette v. Connecticut General Insurance Corps., 419 US 102 (1974).

De igual forma, recientemente la Jueza Laura Taylor Swain tuvo ante su consideración un caso similar al presente. Allí, la Jueza consideró la posible paralización de un caso de expropiación forzosa, siendo este exceptuado de la suspensión de litigios. En consecuencia, los procesos siguieron su curso de acción ante el foro local. La Jueza sostuvo que lo determinante era sopesar el interés afectado del individuo que interesa llevar a cabo el litigio y el efecto que el permitir este tendría sobre el procedimiento de quiebras. Así las cosas, la Jueza entendió que el interés del solicitante podía ser litigado como excepción a suspensión automática de litigios, puesto que el mismo no interfería de modo negativo en el procedimiento de quiebra. Véase, In re The Financial Oversight and Management Board for Puerto Rico, Núm. 17 BK 3283 LTS (BK D. P.R. radicado 7 de junio de 2017) (orden).

De este modo, permitir al recurrido continuar con el litigio de referencia, en ningún sentido perjudica o interfiere con los procedimientos en el Tribunal de Quiebras, bajo el Título III de PROMESA. Todo lo contrario, en la medida que los foros judiciales locales ejerzan eficientemente su jurisdicción concurrente en esta materia,

se fomentará un mayor grado de eficiencia y agilidad procesal.


                              Luis F. Estrella Martínez
                                  Juez Asociado